IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1942

RYAN WALTERS, an individual

    Plaintiff,

v.

UNIVERSITY OF COLORADO AT BOULDER;
BOARD OF TRUSTEES OF UNIVERSITY OF COLORADO;
JESSICA HALLIDAY, individually and in her official capacity as Associate Dean of the Graduate School for University of Colorado at Boulder;

    Defendant,

---

**COMPLAINT WITH JURY DEMAND**

---

Ryan Walters ("Mr. Walters" or "Plaintiff"), by and through counsel, Igor Raykin of Kishinevsky & Raykin, LLC, respectfully files this action against Defendants University of Colorado at Boulder ("CU"), the Board of Trustees of University of Colorado at Boulder ("Board" or "Board of Trustees"), and Jessica Halliday ("Ms. Halliday") and states on information and belief as follows. This action seeks injunctive relief and appropriate damages and costs.

### I.     JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under the Constitution and laws of the United States of America, including but not limited to the Americans with Disabilities Act (42 U.S.C. 12101 *et seq*.) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq*.).

2. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Plaintiff Ryan Walters is a resident of Broomfield County, Colorado.

4. Defendant University of Colorado at Boulder has as its principal place of business Boulder County, Colorado.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Boulder County, Colorado.

## I.     THE PARTIES

6. Mr. Walters has been a student at the University of Colorado ("CU" or "Defendant") since 1994.

7. Though Mr. Walters had some early hiccups, he became a strong student at CU as an undergraduate.

8. In 2006, Mr. Walters began to pursue his Master's degree from CU.

9. Mr. Walters had a grade point average in excess of a 3.5.

10. in 2009, Mr. Walters began pursuing a Ph.D in Health & Behavioral Sciences and had a strong start academically.

11. However, his mental health began to deteriorate and as a direct result, his academic performance suffered as well.

12. Mr. Walters received his first "F" in Spring 2011 and his second in Spring 2012.

13. Mr. Walters managed to bring his grades of briefly, then began to severely struggle in the Fall of 2014.

14. Mr. Walters has been under the care of a medical professional for many years and was diagnosed with attention deficit hyperactivity disorder ("ADHD") in childhood and major depressive disorder in March 2001.

15. He has been seen by behavioral health providers with Kaiser Permanente since January of 2006, and he was seen by a nurse practitioner, Ms. Sallie H. Charles ("Ms. Charles"), on November 18, 2014, March 8, 2016, October 16, 2017, and March 19, 2018.

16. Mr. Walters is a disabled individual as defined by the American with Disabilities Act ("ADA"). The ADA provides that an individual is disabled for purposes of the Act when a person has an impairment that "substantially limits a major life activity." 42 U.S.C. 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*.

17. Mr. Walters' disabilities include major depressive disorder and ADHD.

18. Mr. Walters' disabilities substantially limit the major life activities of concentration, sleeping, eating, thinking, and learning.

19. Mr. Walters is on medication and receives private counseling.

20. As a result of Mr. Walters' disabilities, Mr. Walters was placed on academic probation during the Fall 2015 semester because his GPA fell below the 3.0 minimum requirement.

21. This was documented in a letter sent to Mr. Walters on September 7, 2016, by Ms. Jessica Halliday ("Ms. Halliday"), the Assistant Dean of the Graduate School.

22. Mr. Walters' declining academic performance was commensurate with – and caused by – his declining mental health.

23. The letter also indicated that Mr. Walters was "failing to make satisfactory academic progress in the Health and Behavioral Sciences PhD program."

24. The letter informed Mr. Walters that he had eight years to complete his Ph.D. program, in which he enrolled in the Fall 2009 semester.

25. At this point, Mr. Walters was not on track to complete his program on time.

26. In July of 2018, Mr. Walters went to the Office of Disability Services ("ODS") and provided the ODS with evidence of his disabilities.

27. He sought to be identified as a disabled student under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

28. Despite the evidence that Mr. Walters provided, the OSD refused to recognize him as a disabled student or provide him with reasonable accommodations.

29. One of the accommodations that Mr. Walters requested was a retroactive withdrawal from the Spring of 2014 to Fall 2017 semester, which was reasonable in light of the medical crises that Mr. Walters was experiencing.

30. The ODS referred Mr. Walters' matter to the Office of Case Management.

31. At a later date, in September of 2018, Mr. Walters' retroactive withdrawal came through via the Office of Case Management.

32. As a result, his GPA became approximately 3.4 – which placed him *above* the 3.0 threshold that Ms. Hadley informed him of in September of 2016.

33. Despite this, Mr. Walters still had not been able to register for any classes.

34. On September 10, 2018, he sent an email to the department chair and requested a meeting, but that was ignored.

35. At this point, Mr. Walters' status in the department and his Ph.D. program is unclear.

## II.   CLAIMS AND CAUSES OF ACTION

### A.  FIRST CLAIM FOR RELIEF
### *(VIOLATION OF SECTION 504 OF THE REHABILITATION ACT- AGAINST CU)*

36. Mr. Walters reincorporates and realleges all other paragraphs as if fully set forth herein.

37. Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and its implementing regulations apply to recipients of federal financial assistance from the Department of Education.  *See* 34 C.F.R. § 104.2.

38. CU receives such federal financial assistance and is thus subject to Section 504.

39. Among other things, Section 504 requires that:

> A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same states.  C.F.R. § 104.4(b)(4).

40. With regards to postsecondary educational entities, 34 C.F.R. § 104.43 prohibits universities receiving federal funds from excluding, discriminating against, or otherwise denying benefits to qualified students on the basis of their handicap.

41. Moreover, any such university must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student."  34 C.F.R. § 104.44(a).

42. Education institutions have a "real obligation…to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this obligation*."  *Wong v. Regents of the Univ. of California*, 192 F.3d 807, 817 (1999) (quoting *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999) and *Wynne v. Tufts Univ. Sch. Of Med.*, 932 F.2d 19, 25-26 (1st Cir. 1991) (en banc)).

43. Mr. Walters was and is qualified to attend CU.

44. Mr. Walters is a qualified individual with a disability under Section 504.

45. Despite notice of Mr. Walters' qualifying handicaps, Defendant intentionally discriminated against him, was deliberately indifferent to his rights, and intentionally denied him benefits solely on the basis of his disabilities and working to damage his academic prospects and professional reputation.

46. Defendant also failed to provide Mr. Walters with reasonable accommodations that allowed him access to his professional education. Although CU granted the retroactive withdrawal, CU did not provide Mr. Walters with the accommodations he needed which would have prevented him from needing to request retroactive withdrawal for most of the courses in the first place.

47. Accommodations such as counselling, tutors, note-takers, or taped lectures were not provided even after Mr. Walters gave notice to CU about his diagnosis and made a formal request for accommodations.

48. Defendant's violation of Mr. Walters' rights under Section 504 caused Mr. Walters to suffer damages, including by not limited to psychological, emotional, and reputational damages in addition to the loss of educational opportunities, as well as attorney's fees incurred in this action.

**B. SECOND CLAIM FOR RELIEF**
*(VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT- AGAINST ALL DEFENDANTS)*

49. Mr. Walters incorporates the allegations set forth above as if fully set forth herein.

50. Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101, and its implementing regulations apply to public entities, such as CU.

51. Title II bars public entities from discriminating against qualified individuals with a disability or, by reason of their disability, excluding them from participation in or denying them the benefits of the services, programs, or activities of the public entity.  42 U.S.C. § 12132.

52. Plaintiff's conditions alleged herein constitute disabilities protected under Title II.

53. As explained above, Plaintiff was and is qualified to attend CU.

54. Defendant CU has engaged in illegal disability discrimination, as defined by Title III, by denying Mr. Walters the benefits of its services, facilities, privileges and advantages on the basis of his disability and did not provide him with benefits that are equal to those provided to nondisabled persons.

55. Defendant CU has violated Title II by, without limitation, failing to provide reasonable accommodations. Mr. Walters was arbitrarily denied accommodations for his disabilities when he notified the university of his diagnoses.

56. Defendant CU's ongoing and continuing violations of Title II have caused and will continue to cause harm to Plaintiff.

57. Defendant's violation of Mr. Walters' rights under Title II caused Mr. Walters to suffer damages, including by not limited to psychological, emotional, and reputational damages in addition to the loss of educational and career opportunities, as well as attorney's fees incurred in this action.

### D. THIRD CLAIM FOR RELIEF
(*BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – AGAINST CU*)

58. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

59. Plaintiff's agreement with CU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

60. Thus, it is subject to the duty of good faith and fair dealing that is implied into every contract, under which a contracting party is prohibited from exercising its discretion in a manner that contradicts the other party's reasonable expectations thereunder or in a manner that deprives the other of their benefits under the contract.

61. CU's actions in refusing to accommodate Plaintiff and preventing him from enjoying the benefits afforded to him under the contract breached the duty of good faith and fair dealing, causing him to suffer injuries, damages, and losses in an amount to be proven at trial.

### E. FOURTH CLAIM FOR RELIEF
### (*BREACH OF CONTRACT – AGAINST CU*)

62. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

63. Plaintiff's agreement with CU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

64. Part of that contract was CU's promise to comply with its legal obligations not to discriminate against Plaintiff and to accommodate Plaintiff's disabilities.

65. Yet, in refusing to accommodate Plaintiff's documented disabilities, CU breached, and in failing to accommodate his disabilities, which actions were unlawful, constitute a breach of that contract and caused him to suffer injuries, damages, and losses in an amount to be proven at trial.

## F. FIFTH CLAIM FOR RELIEF
### (*INJUNCTIVE RELIEF*)

66. Plaintiff realleges all other paragraphs as if fully set forth herein.

67. As evidenced by the dispute over Plaintiff's appropriate accommodations and this Complaint, an actual controversy exists between the parties as to whether the Defendants violated Section 504, the ADA, and the contract for educational services, and therefore an actual justiciable controversy is involved.

68. Under 42 U.S.C. 12188, Plaintiff petitions for injunctive relief including an order to Defendants to modify their policy, provide reasonable accommodations to Plaintiff, fully reinstate him into the doctoral program with all of the privileges of being a doctoral student, and provide sufficient time to allow Plaintiff to complete his dissertation to be no sooner than December 20, 2021.

69. Plaintiff further requests that the Court: (1) issue a temporary restraining order and a preliminary injunction pursuant to F.R.C.P. 65, ordering Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them to refrain immediately and pending the final hearing and determination of this action from discriminatory conduct; (2) issue a permanent injunction perpetually enjoining and restraining Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, of the conduct complain; (3) award to Plaintiff costs and disbursements, as well as reasonable attorney's fees; and (4) award Plaintiff such other and further relief as this Court may deem proper, including but not limited to requiring the Defendants to effect proper training to prevent the recurrence of such conduct in their hiring, firing, training and educational policies and procedures.

70. Plaintiff, requests that judgment enter in his favor and against the Defendants, in an amount to be determined by a judge or jury and that the Court also award the Plaintiff his legal fees and costs incurred in pursuing this action.

## III.    DAMAGES

71. Defendants' discriminatory and retaliatory conduct described above has caused the Plaintiff the following damages:
    a. Lost future wages and benefits in amounts to be established at trial;
    b. Damage to professional reputation, in an amount to be established at trial;
    c. Emotional upset, stress, and anxiety in an amount to be established at trial;
    d. Medical costs and damages as a result of Defendants' discriminatory conduct in an amount to be established at trial;
    e. Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.
72. Defendant's violation of Title II was willful, entitling the plaintiff to an award of punitive damages to the fullest extent permitted by law.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the court enter judgment in his favor and against Defendants as follows:

73. A declaration that Defendant CU's conduct as alleged here has violated, and continues to violate, Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act of 1990, and the regulations promulgated under those statutes;

74. Awarding the Plaintiff special damages for lost future wages, benefits, and out of pocket expenses in amounts to be established at trial;

75. Awarding the Plaintiff general damages for emotional distress and damage to professional reputation in an amount to be established at trial;

76. Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

77. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

78. Granting the Plaintiff injunctive relief;

79. Awarding the Plaintiff post-judgment interest on his lost wages award and economic loss; and

80. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff